IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTINA L. HILL,                          )
                                            )
                Plaintiff,                  )
        v.                                  )
                                            )        1:14CV354
CAROLYN W. COLVIN, Acting                   )
Commissioner of Social Security, and the    )
UNITED STATES OF AMERICA,                   )
                                            )
                Defendants.                 )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

        This matter is before the Court on the Motion to Dismiss [Doc. #31] of Defendants

Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, and the United

States and Plaintiff Christina L. Hill's Motion to Amend [Doc. #38] her Response [Doc. #34]

to the Motion to Dismiss. For the reasons discussed below, the Court will grant Plaintiff's

Motion to Amend and grant Defendants' Motion to Dismiss.

I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE

        On April 28, 2014, Plaintiff filed her Complaint [Doc. #1] against Defendants the Social

Security Administration ("SSA") and three SSA employees: Terry Stradtman, Tom Ferrero, and

Troy Greenwald. Plaintiff has since filed a First Amended Complaint [Doc. #19] and a Second

Amended Complaint [Doc. #27-1] against Defendants Stradtman, Ferrero, Greenwald, and the

SSA. The Court granted Plaintiff's unopposed Motion for Leave to file a Second Amended

Complaint [Doc. #27] on June 24, 2015. (Order [Doc. #28].)

In her Second Amended Complaint, Plaintiff alleges that the Defendants violated 15 U.S.C. § 1692 *et seq.* (Fair Debt Collection Practices Act), 15 U.S.C. § 1681 *et seq.* (Fair Credit Reporting Act), 31 U.S.C. § 3701 *et seq.* (Debt Collection Improvement Act),[1] 18 U.S.C. § 1001 (making false statements), 18 U.S.C. § 641 (embezzling or stealing public money, property or records),[2] 18 U.S.C. § 1951 (extortion), 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds), and 18 U.S.C. § 1341 (mail fraud).  (Second Am. Compl. [Doc. #27-1], at 15-21.)[3]  Plaintiff also alleges that Defendants engaged in the intentional infliction of emotional distress against her.  (<u>Id.</u> at 17.)  As a result of these allegations, Plaintiff seeks an injunction prohibiting Defendants from engaging in further violations of the above statutes, from transferring her account to any debt collector, from placing Plaintiff on any "deadbeat list," or from impugning her reputation as a consumer.  (Second Am. Compl. [Doc. #27-1], at 21.)  Plaintiff also seeks statutory and punitive monetary awards.  (<u>Id.</u> at 21-23.)  As explained below, Plaintiff may also be seeking review of an Administrative Law Judge's decision that was partially unfavorable to her.

On a Notice of Substitution [Doc. #36], the Court substituted Defendants Carolyn Colvin, Acting Commissioner of Social Security, and the United States for Defendants

---

[1] Plaintiff cites the Debt Collection Improvement Act as being codified under 15 U.S.C. § 1692, but it is actually codified under 31 U.S.C. § 3701 *et seq.*

[2] Plaintiff states that 18 U.S.C. § 641 relates to fraud, but the clear language of the statute relates to the items listed in the above parenthetical.

[3] Plaintiff's Second Amended Complaint includes two pages labeled "6" between pages 5 and 7.  Regardless of this error, the Court will use the numbers printed on the pages when citing to the Second Amended Complaint.

Stradtman, Ferrero, Greenwald, and the SSA. (Order [Doc. #37].) Additionally, the claims against Defendants Stradtman, Ferrero, and Greenwald were dismissed. (Id.)

Plaintiff's allegations stem from facts arising out of alleged overpayments of benefits by the SSA to Plaintiff. On or about April 3, 2011, the SSA notified Plaintiff that the SSA had assessed an overpayment against her.[4] On or about May 11, 2011, Plaintiff mailed a letter to the SSA requesting a waiver of the overpayment. (Second Am. Compl. [Doc. #27-1], at 5.) On June 29, 2011, the SSA acknowledged receiving this response and said that it would "contact Plaintiff later concerning this request." (Letter from SSA [Doc. #27-4].)

SSA regulations specify that "no adjustment or recovery action will be taken until after the initial waiver determination is made." 20 C.F.R. § 404.506(b). Nonetheless, Plaintiff received numerous letters over the next two years from the SSA asking that Plaintiff repay some or all of the alleged overpayment. (See, e.g., Billing Statement [Doc. #27-7] (Aug. 4, 2011); Billing Statement [Doc. #27-8] (Aug. 17, 2011); Billing Statement [Doc. #27-11] (Jan. 17, 2012); Billing Statement [Doc. #27-20] (Nov. 15, 2012); Billing Statement [Doc. #27-23] (May 24, 2013); Billing Statement [Doc. #27-22] (June 3, 2013).)

"The Field Office scheduled a personal conference to discuss [Plaintiff's] request for waiver" for June 5, 2013, but Plaintiff did not attend the conference. (ALJ Decision [Doc. #32-

---

[4] The precise amount the SSA assessed against Plaintiff at this point (and various points throughout the relevant factual period) is unclear from the record. (See, e.g., Letter from SSA to Christina L. Hill [Doc. #27-3] (Apr. 3, 2011); Billing Statement [Doc. #27-7] (Aug. 4, 2011); Billing Statement [Doc. #27-8] (Aug. 17, 2011); Billing Statement [Doc. #27-11] (Jan. 17, 2012); Billing Statement [Doc. #27-20] (Nov. 15, 2012); Billing Statement [Doc. #27-23] (May 24, 2013); Billing Statement [Doc. #27-22] (June 3, 2013).)

6], at 1.)[5] The Field Office then denied Plaintiff's waiver request on June 19, 2013. (ALJ Decision [Doc. #32-6], at 1.) Plaintiff immediately sought reconsideration of the waiver denial. (Id.)

Unbeknownst to Plaintiff, on or about July 25, 2013, the SSA reported to Equifax an undue balance related to the overpayment dispute. (Letter from Equifax to Christina L. Hill [Doc. #27-24].) In August of 2013, Plaintiff became aware that the SSA had made this report. (Second Am. Compl. [Doc. #27-1], at 9; myFico - Account Details [Doc. #27-27].) On August 12, 2013, SSA employee Tom Ferrero called Plaintiff and confirmed to her that the delinquency had been prematurely added and that it would be removed. (Second Am. Compl. [Doc. #27-1], at 9; Defs.' Mem. Supp. Mot. to Dismiss [Doc. #32], at 20.) The SSA later confirmed in writing that it was "contacting the credit bureaus and requesting that all reference to [Plaintiff's] overpayment be deleted from [her] credit report." (Letter from SSA [Doc. #27-28].)

Plaintiff's earlier "request for reconsideration [of the waiver request] was denied on September 11, 2013 and again on October 30, 2013." (ALJ Decision [Doc. #32-6], at 1.) On November 1, 2013, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Request for Hearing by Administrative Law Judge [Doc. #27-32]). On April 28, 2014, Plaintiff filed her Complaint [Doc. #1] in this Court.

In response to Plaintiff's November 2013 request, a hearing before the ALJ was held on September 4, 2014. (ALJ Decision [Doc. #32-6], at 1.) On April 8, 2015, the ALJ entered a

---

[5] Plaintiff states that she "went to this personal conference" and supports this statement by naming the person with whom she spoke along with describing that person's attire. (Second Am. Compl. [Doc. #27-1], at 14.)

decision partially favorable and partially unfavorable to Plaintiff. (Notice of Decision [Doc. #32-6].) The ALJ waived $21,715 of the overpayment and did not waive $16,432 of the overpayment. (Id. at 4-5.) The ALJ waived a portion of the overpayment because Plaintiff was not at fault in causing that portion of the overpayment and recovering that portion of the overpayment would be against equity and good conscience. (Id.) The other portion of the overpayment was not waived because Plaintiff was not completely without fault in causing that portion of the overpayment. (Id. at 3-5.) Plaintiff does not allege that she has sought review of the ALJ's decision with the Appeals Council nor is there any evidence on the record suggesting she has done such. (See Decl. of Kathie Hartt [Doc. #32-1], at 2-3 (Office of Disability Adjudication and Review's official file for Plaintiff contains no mention of Plaintiff seeking review with Appeals Council)).

On this point, it is unclear whether Plaintiff is seeking review by the Court of the ALJ's decision.[6] Because *pro se* filings are to be construed liberally, e.g., Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978), the Court will also construe Plaintiff's Second Amended Complaint as a request for review of the ALJ's decision, in addition to asserting her various other claims

---

[6] The Court acknowledges that Plaintiff explains in her Response that "[T]his suit is not about being overpaid or not waiving the overpayment, but [instead is about] the SSA attempt[ing] to defalcate and extort more money [from me] than the SSA paid [to me]." (Response [Doc. #34], at 1-2.) Other portions of Plaintiff's filings, however, at least suggest she is seeking the discharge of the overpayment amount that was not waived. (See, e.g., Response [Doc. #34], at 8 ("[T]he debt should be discharged."); id. at 12-13 (discussing purported inability to appeal ALJ's decision if claims are considered by the Appeals Council)). In the interest of ensuring that all of Plaintiff's claims are potentially considered (and because the claims in this case will ultimately be dismissed without prejudice), the Court will consider the possibility that Plaintiff intends to appeal the ALJ's decision here.

5

described above.

On July 28, 2015, Defendants Stradtman, Ferrero, Greenwald, and the SSA filed a Motion to Dismiss [Doc. #31] Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed the Motion to Dismiss in a Response [Doc. #34]. On September 21, 2015, as mentioned above, Defendants Colvin and the United States were substituted for Defendants Stradtman, Ferrero, Greenwald, and the SSA. On September 25, 2015, Plaintiff filed a Motion to Amend [Doc. #38] her Response [Doc. #34] to Defendants' Motion to Dismiss. Therefore, Defendants' Motion to Dismiss [Doc. #31] and Plaintiff's Motion to Amend [Doc. #38] are currently before the Court.

II.     DISCUSSION

A. Plaintiff's Motion to Amend

The Court will first consider Plaintiff's Motion to Amend [Doc. #38] her Response to the Motion to Dismiss. Plaintiff's proposed amendments consist of changes to her Response that recognize the substitution of the parties in this case as opposed to consisting of new arguments or responses to Defendants' arguments. Plaintiff's Motion therefore appears to have been an effort to bring her response into conformity with this Court's earlier party substitution Order [Doc. #37] rather than being any type of attempt to circumvent the normal rules for filing responses. See Local Rule 7.3 (specifying ordinary methods of responding to motions). Furthermore, Defendants did not oppose Plaintiff's Motion to Amend. Therefore, the Court

will grant Plaintiff's Motion to Amend [Doc. #38].

B. Defendants' Motion to Dismiss

The Court will next consider Defendants' Motion to Dismiss [Doc. #31] for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and then for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

1. Standard for Dismissal under Rule 12(b)(1)

Rule 12(b)(1) allows a party to move for dismissal of a claim based upon a "lack of subject-matter jurisdiction." The federal courts are courts of limited subject matter jurisdiction. "The federal courts . . . are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, <u>and</u> (2) that have been entrusted to them by a jurisdictional grant by Congress." 13 Charles Alan Wright et al., Federal Practice and Procedure Juris. § 3522 (3d ed. 2015) (emphasis added and footnote omitted). When a federal court lacks subject matter jurisdiction over a case, the case must be dismissed. <u>Id.</u> As will be seen below, the primary subject matter jurisdiction concern in this case is whether Congress has provided the appropriate jurisdictional grant.

"The plaintiff has the burden of proving that subject matter jurisdiction exists." <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999). A district court should grant a motion to dismiss pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Id.</u> (quoting <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991)). In considering a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere

7

evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (quoting Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768).

A motion to dismiss for lack of subject matter jurisdiction can either consist of a "facial" challenge or a "factual" challenge. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, the defendant alleges that the "'complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In that situation, the facts alleged in the complaint are taken as true." Id. In a factual challenge, the court can go beyond the complaint, engage in evidentiary proceedings, and make determinations regarding disputed jurisdictional facts. Id. Here, Defendants argue that Plaintiff's Second Amended Complaint is facially insufficient with respect to subject matter jurisdiction; in other words, Defendants claim that even if the facts Plaintiff alleges are taken as true, she has not pled sufficient facts to support a finding of subject matter jurisdiction.

Along these lines, a district court lacks subject matter jurisdiction over claims which are precluded by sovereign immunity. United States v. Jones, 225 F.3d 468, 469 (4th Cir. 2000). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. N.D. ex. rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287, 103 S. Ct. 1811, 1819, 75 L. Ed. 2d 840 (1983).[7] Sovereign immunity extends to federal

---

[7] Plaintiff appears to argue that sovereign immunity does not apply in this case because she wrote letters to Congress "for a Congressional inquiry" which were returned as undeliverable. Plaintiff's contention therefore appears to be that since she was not given an

government agencies, see FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 471, 1000, 127 L. Ed. 2d 308 (1994), and to federal officials acting in their official capacities, see Portsmouth Redevelopment & Hous. Auth. v. Pierce, 706 F.2d 471, 473 (4th Cir. 1983).

"A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" Franconia Assocs. v. United States, 536 U.S. 129, 141, 122 S. Ct. 1993, 2001, 153 L. Ed. 2d 132 (2002) (quoting United States v. King, 395 U.S. 1, 4, 89 S. Ct. 1501, 1503, 23 L. Ed. 2d 52 (1969)). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096, 135 L. Ed. 2d 486 (1996). The burden is therefore on Plaintiff to demonstrate a waiver of sovereign immunity. See Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005).

Due to Plaintiff's *pro se* status, to the extent Plaintiff has failed to adequately plead subject matter jurisdiction, the Court will consider whether there are any plausible bases upon which Plaintiff could address this issue, given the contents of her filings. Though the Court is not an advocate for *pro se* plaintiffs, Weller v. Dep't of Soc. Servs. for City of Balt., 901 F.2d 387, 391 (4th Cir. 1990), *pro se* filings are to be "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks and citation omitted), and should be considered with "special judicial solicitude," Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985).

---

opportunity to receive the "consent of Congress" to file a lawsuit, sovereign immunity is inapplicable in this case. (See Response [Doc. #34], at 17-18.) Plaintiff is mistaken in this regard. The phrase "consent of Congress" refers to statutes passed by Congress which waive the United States's generally-applicable sovereign immunity rather than the act of an individual writing to Congress seeking permission to sue the government in a particular case.

9

There is an "indisputable desire that those litigants with meritorious claims should not be tripped up in court on technical niceties." Beaudett, 775 F.2d at 1277-78.

### 2. Defendants' Rule 12(b)(1) Motion and Plaintiff's Claims Arising Under the Social Security Act

The Court will first consider the sufficiency of Plaintiff's claims in alleging the presence of subject matter jurisdiction to the extent that Plaintiff's claims could arise under the Social Security Act. Congress has provided that the district courts only have subject matter jurisdiction over claims arising under the Social Security Act in the manner described in 42 U.S.C. § 405(g), as limited by 42 U.S.C. § 405(h). Section 405(g) permits consideration and review by the district court of any "final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). A claimant can only receive a final decision by completing the four-step administrative review process. 20 C.F.R. § 404.900(a); Schweiker v. Chilicky, 487 U.S. 412, 424, 108 S. Ct. 2460, 2468, 101 L. Ed. 2d 370 (1988).

That four-step administrative review process begins with an individual first receiving an "initial determination." See 20 C.F.R. § 404.902. Second, if the claimant is dissatisfied with the initial determination, he or she can seek reconsideration of the initial determination. See 20 C.F.R. § 404.907. Third, if the claimant is dissatisfied with the reconsidered determination, the claimant can request a hearing before an ALJ. See 20 C.F.R. § 404.929. Fourth, if the claimant is dissatisfied with the ALJ's hearing decision, the claimant can request a review of the decision by the Appeals Council. See 20 C.F.R. § 404.967. The Appeals Council may either deny the request for review and allow the ALJ's decision to stand as the final decision of the Commissioner or it may grant the request for review and issue its own decision. See 20 C.F.R.

10

§ 404.981.  The Appeals Council may also remand the case back to the ALJ if the case needs additional evidence or additional action by the ALJ.  <u>See</u> 20 C.F.R. §§ 404.977, 404.979.  Once the Appeals Council either denies review or issues its own decision, the claimant can seek judicial review by timely filing an action in federal district court.  <u>See</u> 20 C.F.R. §§ 404.981, 422.210.  Generally, failing to proceed to the next level of administrative review at any point makes the most recent existing determination binding.  <u>See</u> 20 C.F.R. §§ 404.905, 404.921, 404.955, 404.981.

Plaintiff's argument is somewhat unclear, but she seems to suggest that she filed this lawsuit, in part, because 42 U.S.C. § 405(h) precludes judicial review if a decision of the SSA is reviewed by an ALJ or the Appeals Council.  (<u>See</u> Response [Doc. #34], at 13 ("The Appeal hearing was executed to prevent me from lawfully being able to litigate [my claims] due to 42 U.S.C. § 405(h).  This statute clearly states that after the appeal hearing [one] cannot sue . . . .").)  To the extent Plaintiff is making this suggestion, she is not correct.  Section 405(h) provides that "The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency <u>except as herein provided</u>." (emphasis added).   This "except as herein provided" language refers to section 405(g), which provides the proper method of seeking review.  In order for a district court to have subject matter jurisdiction over a claim arising under the Social Security Act, a plaintiff is <u>required</u> to seek review of an ALJ's decision with the Appeals Council before seeking review in the district court.  <u>See</u> <u>Buckner v. Heckler</u>, 804 F.2d

258, 259 n.2 (4th Cir. 1986). In other words, a plaintiff can only have her claims arising under the Social Security Act considered by this Court after completing the administrative review process—namely, by having the Appeals Council either review the ALJ's decision or deny the request for review of the ALJ's decision. Absent this procedural review, subject matter jurisdiction would not exist.

A case is considered to arise under the Social Security Act if the Act "provides both the standing and the substantive basis for the presentation of" a plaintiff's claims. Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S. Ct. 2457, 2464, 45 L. Ed. 2d 522 (1975). Here, Plaintiff's factual allegations substantively involve the Commissioner's determinations about whether she owed an overpayment, whether she must repay any overpayment she received, and the Commissioner's efforts to recover the overpayment. Therefore, insofar as Plaintiff seeks review of the ALJ's decision or the Commissioner's efforts to collect the overpayment, those claims arise under the Social Security Act. As a result, the Court could potentially have subject matter jurisdiction to review the ALJ's decision or the Commissioner's efforts to collect the overpayment only if it arises under the jurisdictional grant provided by 42 U.S.C. § 405(g).

To the extent Plaintiff seeks review of the ALJ's decision without complying with 42 U.S.C. § 405(g), this Court lacks subject matter jurisdiction to consider her claim. Though Plaintiff has received a decision from an ALJ, she has not demonstrated that the Appeals Council has either denied review of the ALJ's decision or issued its own decision. (See Second Am. Compl. [Doc. #27-1], at 13-14 (discussing only ALJ's decision and failing to mention any review by Appeals Council); Decl. of Kathie Hartt [Doc. #32-1], at 2-3 (indicating Plaintiff's file

12

does not contain any reference to action by the Appeals Council)). Therefore, Plaintiff has not exhausted her administrative remedies with the SSA and has not shown that the Commissioner has issued a "final decision." See Buckner, 804 F.2d at 259 n.2. As explained above, this Court only has jurisdiction to review a "final decision" by the Commissioner. 42 U.S.C. § 405(g). Such a "final decision" is only made once the Appeals Council denies review or issues its own decision. 20 C.F.R. § 404.98. Hence, this Court lacks subject matter jurisdiction to review the ALJ's decision and her claim in that respect, if any, must be dismissed pursuant to Rule 12(b)(1).

In the same vein, to the extent Plaintiff seeks an injunction against the SSA's collection efforts, that claim arises under the Social Security Act and also requires exhaustion of administrative remedies. See Robinson v. Comm'r of Soc. Sec., Civ. No. 2:13-03450 (WJM), 2014 WL 652352, at *2 (D.N.J. Feb. 19, 2014). Because Plaintiff has not exhausted her administrative remedies, Plaintiff's claims would also be subject to dismissal pursuant to Rule 12(b)(1) to the extent those claims seek an injunction against the SSA's collection efforts.

Furthermore, to the extent Plaintiff might seek to have this Court review pursuant to 42 U.S.C. § 405(g) the Commissioner's decision to have the overpayment reported to Equifax (which was not considered by the ALJ), this Court also lacks subject matter jurisdiction to consider that claim because it is barred by sovereign immunity. As the District Court for the Central District of California explained in a similar situation involving inaccurate credit reports:

> [T]he limited waiver of sovereign immunity effected by Section 405(g) allows this Court to review only "final" decisions of the SSA made after a hearing. The SSA's reporting of the overpayment debt [to consumer reporting agencies] was not a "final" decision, nor was it made after hearing, and it is not subject to either the SSA's administrative review process or the judicial review process. *See* 20 C.F.R. § 404.903(t) ("[d]etermining whether we will refer information about your

overpayment to a consumer reporting agency is not an "initial determination"; it is "not subject to the administrative review process provided by this subpart" and is "not subject to judicial review"). . . . This Court simply is not permitted to review Plaintiff's complaint about the reporting of his overpayment debt under Section 405(g), as such review does not fall within the scope of the statute and, thus, the waiver of sovereign immunity it effected.

Kenney v. Barnhart, No. SACV 05-426-MAN, 2006 WL 2092607, at *7 (C.D. Cal. July 26, 2006). Therefore, pursuant to Rule 12(b)(1), the Court will dismiss Plaintiff's claim insofar as it seeks to have the Court review the Commissioner's decision to report the overpayment to Equifax.

Given the possibility of the Court disallowing Plaintiff's claims on the basis of sovereign immunity, Plaintiff alternatively argues that this Court has subject matter jurisdiction of her claims arising under the Social Security Act pursuant to the federal question jurisdiction statute, 28 U.S.C. § 1331. (Response [Doc. #34], at 11-12.) However, 42 U.S.C. § 405(h) expressly states that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under [28 U.S.C. § 1331 or 28 U.S.C. § 1346] to recover on any claim arising under this subchapter." Therefore, 28 U.S.C. § 1331 does not grant this Court subject matter jurisdiction of her claims insofar as they arise under the Social Security Act.

Similarly, this Court lacks subject matter jurisdiction to consider Plaintiff's additional claim of intentional infliction of emotional distress pursuant to the jurisdictional grant of the Federal Tort Claims Act, 28 U.S.C. § 1346(b).[8] The FTCA is a waiver of sovereign immunity,

_____

[8] The Court notes that only the United States, rather than the Commissioner, is a proper defendant pursuant to the FTCA. 28 U.S.C. § 2679(a); see, e.g., Columbia Gas Transmission

but it is not unqualified. <u>Jarrett v. United States</u>, 874 F.2d 201, 203 (4th Cir. 1989). The waiver is limited by 42 U.S.C. § 405(h), which, as previously mentioned, states that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee therefore shall be brought under . . . [28 U.S.C. § 1346] to recover on any claim arising under this subchapter." "The language of [42 U.S.C.] § 405(h) is unambiguous and precludes" Plaintiff's intentional infliction of emotional distress claim "because it is an effort to recover on a claim arising under the Social Security Act." <u>Jarrett</u>, 874 F.2d at 204. The thrust of Plaintiff's Second Amended Complaint is that the overpayment was improperly assessed and that the SSA's efforts to collect on the overpayment were improper. "A trial on the present action would require a relitigation of" the overpayment determination. <u>See id.</u> Hence, Plaintiff's intentional infliction of emotional distress claim essentially arises under the Social Security Act and is therefore precluded by 42 U.S.C. § 405(h) for the reasons noted herein.

Furthermore, Plaintiff's intentional infliction of emotional distress claim is also barred for lack of exhaustion because she did not present it to the SSA prior to filing her lawsuit. (<u>See</u> Decl. of Dorothy M. Guy [Doc. #32-7]; Response [Doc. #34], at 14-15.) Under the FTCA, before suing the United States, a plaintiff must exhaust her remedies by presenting the claim to the appropriate federal agency and having the claim denied by the agency in writing. 28 U.S.C. § 2675(a). This presentment requirement is a jurisdictional requirement and cannot be waived. <u>See</u> <u>Henderson v. United States</u>, 785 F.2d 121, 123 (4th Cir. 1986); 28 U.S.C. § 2675(a). Hence,

---

LLC v. United States, Civil Action No. 3:14-11854, 2015 WL 4276334, at *3 (S.D. W. Va. July 14, 2015).

15

Plaintiff's intentional infliction of emotional distress claim cannot be considered by the Court for this reason as well. Therefore, the Court will dismiss Plaintiff's intentional infliction of emotional distress claim pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Given that this Court lacks subject matter jurisdiction to consider any of Plaintiff's claims arising under the Social Security Act, "[t]he question then is whether, despite the sovereign immunity doctrine and the Supreme Court's pronouncements regarding the exclusive nature of Section 405(g) jurisdiction for all claims arising under the [Social Security] Act, Plaintiff may pursue [her] claim[s] under any of" the other bases upon which she claims jurisdiction, namely the Debt Collection Improvement Act ("DCIA"), the Fair Debt Collection Practices Act ("FDCPA"), various federal criminal statutes, and the Fair Credit Reporting Act ("FCRA"). See Kenney, 2006 WL 2092607, at *7. Each of these will be considered in turn.

3. Defendants' Rule 12(b)(1) Motion and Plaintiff's DCIA and FDCPA Claims

As explained above, the Commissioner is immune from suit under the sovereign immunity doctrine in the absence of an unambiguous waiver by Congress. Consequently, in order for Plaintiff to be able to pursue a claim against the Commissioner based upon the DCIA or FDCPA, there must be a waiver of sovereign immunity; otherwise, the Court will lack subject matter jurisdiction.

With respect to Plaintiff's claims under the FDCPA and DCIA, she has failed to identify any specific statutory language waiving sovereign immunity. In fact, courts have held that these statutes do not waive sovereign immunity. See Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (FDCPA does not waive sovereign immunity); Wearing v. Mill, No. 5:09-CV-

16

113-D, 2010 WL 4923461, at *3 (E.D.N.C. Nov. 29, 2010) (same); <u>Miller v. Smith</u>, 952 F. Supp. 2d 275, 283 (D.D.C. 2013) (DCIA does not waive sovereign immunity for monetary damages). Therefore, Plaintiff's claims under the FDCPA and DCIA will be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

    4. Defendants' Rule 12(b)(1) Motion and Plaintiff's Claims for Relief under Various Federal Criminal Statutes

  Plaintiff alleges several claims purportedly arising under various federal criminal statutes, namely, 18 U.S.C. § 641 (embezzling or stealing public money, property or records), 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds), 18 U.S.C. § 1001 (making false statements), 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 1951 (extortion). The Fourth Circuit has explained that "implied causes of action are disfavored and should be found only where a statute clearly indicates that the plaintiff is one of a class for whose benefit the statute was enacted and [that] there is some indication that Congress intended such a cause of action to lie." <u>Flowers v. Tandy Corp.</u>, 773 F.2d 585, 589 (4th Cir. 1985).

  As a general matter, there is no private right of action under criminal statutes. <u>Doe v. Broderick</u>, 225 F.3d 440, 448 (4th Cir. 2000). Additionally, numerous courts have held that there is no private right of action under 18 U.S.C. §§ 641, 666, 1001, and 1341. <u>See, e.g.</u>, <u>Murphy v. JP Morgan Chase</u>, No. 2:15-cv-0725, 2015 WL 2235882, at *4 (E.D. Cal. May 11, 2015) (§ 641); <u>Doyle v. S.C. Democratic Party</u>, No. 3:10-CV-0203-MBS, 2011 WL 1261574, at *5 (D.S.C. Mar. 31, 2011) (§ 666); <u>Bardes v. Mass. Mut. Life Ins. Co.</u>, No. 1:11CV340, 2011 WL 1790816, at *3 (M.D.N.C. May 10, 2011) (Auld, Mag. J.) (§§ 1001, 1341); <u>Davis v. Duncan</u>, No. 1:12CV262, 2015 WL 1475723 (M.D.N.C. Mar. 31, 2015) (Peake, Mag. J.) (§ 1341), <i>adopted</i> Judgment (Apr.

27, 2015), ECF No. 37; Johnson v. J.P. Morgan Chase Nat. Corp. Servs., Inc., No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023, at *5 (W.D.N.C. Aug. 5, 2014) ("mail fraud"). Therefore, Plaintiff's claims brought under 18 U.S.C. §§ 641, 666, 1001, and 1341 will be dismissed pursuant to Rule 12(b)(1).

With respect to Plaintiff's extortion allegation under 18 U.S.C. § 1951, extortion falls under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and RICO generally allows for private rights of action. See 18 U.S.C. §§ 1951, 1961, 1962, 1964; US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010). However, this is not the general case because the Commissioner and United States are not liable for RICO actions due to sovereign immunity. Brown v. Wachovia Bank, Civil Action No. 06-0153, 2007 WL 1378491 (D.D.C. May 10, 2007); Pieczenik v. Domantis, 120 F. App'x 317, 320 (Fed. Cir. 2005) ("[I]t is well settled that the government cannot be liable under RICO because the United States does not fall within the statute's definition of a 'person' capable of violating RICO."). Hence, Plaintiff's extortion claim will be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

5. Defendants' Rule 12(b)(6) Motion and Plaintiff's FCRA Claim

With respect to Plaintiff's claim under the FCRA, the Court first notes that at least two courts have determined that the FCRA waived sovereign immunity. Bormes v. United States, 759 F.3d 793, 795-98 (7th Cir. 2014); Mooneyham v. Equifax Info. Servs., LLC, 99 F. Supp. 3d 720, 725-26 (W.D. Ky. 2015) (FCRA waived sovereign immunity for claim against U.S. Department of Education as furnisher of information). Beyond challenging subject matter jurisdiction in this case, however, Defendants also moved for dismissal under Fed. R. Civ. P.

18

12(b)(6), which requires dismissal where a plaintiff has failed to state a claim upon which relief can be granted. "[A] primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014). "To survive a 12(b)(6) motion to dismiss, Plaintiff['s] complaint 'must contain sufficient facts to state a claim that is plausible on its face.'" Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Id. (quoting Kolon Indus., Inc., 637 F.3d at 440). "In so doing, a count may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Id. (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

Here, even if the Court has subject matter jurisdiction over Plaintiff's FCRA claim, Plaintiff has not alleged facts sufficient to support her FCRA claim and dismissal is therefore proper under Rule 12(b)(6) for failure to state a claim. Plaintiff alleges that the Commissioner violated her obligations as a "furnisher of information" to credit reporting agencies.

> Section 1681s–2(b) of FCRA imposes a duty on furnishers of information to investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a credit reporting agency ("CRA") pursuant to 15 U.S.C. § 1681i(a)(2). If a consumer notifies a CRA that he

19

disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. Upon receipt of this notice, a furnisher must: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to 15 U.S.C. § 1681i(a)(2); (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "incomplete or inaccurate." A violation of section 1681s–2(b) occurs when a furnisher negligently or willfully fails to reasonably investigate a properly lodged consumer dispute as required by 15 U.S.C. § 1681s–2(b)(1)(A).

Clifton v. Nationstar Mortg., LLC, Civ. Action No. 3:12-02074-MBS, 2013 WL 789958, at *2 (D.S.C. Mar. 4, 2013). The FCRA provides for different types of damages based upon whether the violation was willful or negligent. See 15 U.S.C. § 1681n (willful noncompliance); 15 U.S.C. § 1681*o* (negligent noncompliance).

Plaintiff has failed to allege that the Commissioner did not fulfill her obligations under the FCRA. As Plaintiff alleges in her Second Amendment Complaint, after being informed of the improper credit report entry, SSA employee Tom Ferrero called Plaintiff and informed her that the entry had been added prematurely and would be removed. (Second Am. Compl. [Doc. #27-1], at 9.) The SSA later confirmed in writing that it was "contacting the credit bureaus and requesting that all reference to [Plaintiff's] overpayment be deleted from [her] credit report." (Letter from SSA [Doc. #27-28].) Hence, even taking all of Plaintiff's factual allegations as true, the Commissioner met her duties under the FCRA and Plaintiff has not and cannot allege facts sufficient to support a claim that the Commissioner violated the FCRA. In other words, even assuming that all of Plaintiff's factual allegations are true, Plaintiff would not be entitled to relief

under the FCRA. Therefore, the Court will dismiss Plaintiff's FCRA claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

III.   CONCLUSION

In summary, pursuant to Rule 12(b)(1), the Court lacks subject matter jurisdiction to consider Plaintiff's claims to the extent they arise under the Social Security Act because she has not exhausted her administrative remedies. In addition, 20 C.F.R. § 404.903(t) specifies that the Commissioner's decision to refer information about a plaintiff's overpayments to a consumer reporting agency is not subject to judicial review; therefore, this Court lacks subject matter jurisdiction to consider her claim in that regard. Plaintiff's claims arising under the Social Security Act will therefore be dismissed pursuant to Rule 12(b)(1).

To the extent Plaintiff argues that there are alternative means by which the Court could consider her claims, the Court lacks subject matter jurisdiction to consider Plaintiff's DCIA and FDCPA claims in addition to Plaintiff's claims under the various criminal statutes (18 U.S.C. §§ 641, 666, 1001, 1341, 1951). Plaintiff's DCIA claim, FDCPA claim, and claims under the various criminal statutes will therefore be dismissed pursuant to Rule 12(b)(1). With respect to Plaintiff's FCRA claim, Plaintiff has failed to state a claim upon which relief can be granted and her FCRA claim will therefore be dismissed pursuant to Rule 12(b)(6). Therefore, the Court will grant Defendants' Motion to Dismiss [Doc. #31]. Additionally, for the reasons stated above, the Court will grant Plaintiff's Motion to Amend [Doc. #38] her Response [Doc. #34].

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend [Doc. #38] her Response [Doc. #34] is GRANTED, that Defendants' Motion to Dismiss [Doc. #31] is

GRANTED, and that this action is DISMISSED WITHOUT PREJUDICE.[9]

As all claims in this action are now dismissed, a Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 23rd day of February, 2016.

_____
United States District Judge

---

[9] Claims dismissed due to a lack of subject matter jurisdiction are ordinarily dismissed without prejudice. <u>See</u> Fed. R. Civ. P. 41(b). To the extent Plaintiff's FCRA claim is being dismissed pursuant to Fed. R. Civ. P. 12(b)(6), the Court also dismisses that claim without prejudice.